## BOND STORES INC v MILLER, Admrx

Ohio Appeals, 9th Dist, Lorain Co

No 714.   Decided Jan 17, 1935

J. A. Curtis, Cleveland, Day & Day, Cleveland, and W. L. Grills, Lorain, for plaintiff in error.

Thomas & Handy, Cleveland, and Keep & Thompson, Lorain, for defendant in error.

## OPINION

By WASHBURN, PJ.

The case was submitted to this court just before the announcement of a decision by the Supreme Court which overruled two comparatively recent decisions of the Supreme Court, and which establishes the law to be that, although the trial court

could not grant a second new trial upon the ground that the verdict is manifestly against the weight of the evidence, still this court "has the power to examine the record and to weigh the evidence for the purpose of determining whether the verdict, on the second trial, was in fact against the weight of the evidence."

**Werner v Rowley, 129 Oh St 15.**

The one claimed error which we are to consider is whether the finding that the employee of the defendant who was driving the car at the time of the accident was acting for the defendant and within the scope of his employment, is manifestly against the weight of the evidence.

We do not deem it necessary to refer in detail to the evidence, for the reason that our position may be made plain by a very general summary of the evidence.

The defendant conducted a retail clothing store in the city of Lorain, which was manned by a general manager, an assistant manager, a salesman, and a tailor who did not make clothing but who altered and fitted suits.

Almost all of the suits sold were taken from the store by the customers, but occasionally a salesman, on his own initiative would arrange to deliver a suit, which was done by one of the salesmen, but the defendant did not maintain a delivery system.

The company furnished large quantities of memorandum pads, on the cover of which there was an advertisement of the business of the defendant, and these pads were used for advertising purposes. There were times when the manager and the employees distributed these pads at public gatherings and at various other places, under the direction and instructions of the manager, in which instances the employees were clearly acting for the company and within the scope of their authority, and there were also times when, wthout any instructions from the manager, the employees gave out said pads, together with the personal card of the employee giving them out, this being done on the initiative of the employee for the reason that, if a customer, when visiting the store, inquired for a particular employee, the purchase made by said customer was credited to the employee who was asked for, although some other employee may have actually made the sale, and such transaction was known as a "personal trade" and the employees were allowed a commission thereon.

**Without making known many of the details hereinbefore described,** plaintiff offered evidence tending to prove that two of such employees—the assistant manager and the tailor—using the assistant manager's personal automobile, made a trip many miles in the country, and, with the knowledge of the manager, took along and delivered a suit of clothes which one of the employees had sold to a customer, and also took along a quantity of said advertising pads, some of which were given out at a couple of gas stations; that on the way home said automobile collided with a motorcycle being driven by plaintiff's husband; and that in the collision the plaintiff's husband was killed.

A witness for the plaintiff, who was visited by the manager of the store a few days after the accident, was permitted, over the objection and exception of the defendant, to testify that the manager said to said witness that said assistant manager, who was driving his car at the time of the accident, and the tailor who accompanied him, "were out soliciting for" the defendant on the day in question.

The manager later denied that he made said statement, but we are clearly of the opinion that—since the statement did not accompany the act from which the injuries arose, and was not explanatory of anything in which the master, through the manager, was then engaged, but was merely a narration of a past occurrence—even if the manager did make the statement, it was an unauthorized admission or declaration on his part which was not admissible against his principal.

There is no claim that the manager was an officer of the defendant, and there is no evidence tending to prove that he directed that the trip be made, or directed what should be done on the trip, and no evidence that he did anything in connection with the trip except to consent that the two employees should have the day off and that he knew that they intended to deliver the suit on the trip and assumed that they intended to take advertising pads with them; and his interview with said witness was not for the purpose of obtaining information as to whether said employees were on a mission for the defendant or on a mission of their own, and said declaration was not explanatory of and had no connection with the object of said interview, and was, as has been said, a mere narration of a past occurrence.

Disregarding the declaration hereinbefore referred to, all that the plaintiff did was to introduce evidence of facts which, if not

explained by a full disclosure of the object and purpose and acts and conduct of the two employees making the trip, **might** warrant the **inference** that that trip was made on behalf of the company and in furtherance of its business, and that such employees were presumably acting within the scope of their authority.

The defendant examined, as witnesses, the manager, the assistant manager, the tailor, and third parties visited by said assistant manager and tailor on the trip, and they explained fully how the trip came to be taken—the primary object being to serve the personal interests of the assistant manager in securing a large quantity of different kinds of fowls for Thanksgiving festivities in a church where he was chairman of the committee on arrangements—and they testified in detail concerning all that was done on the trip. Their evidence was in no manner contradicted, and it not only overcame any inference that might be drawn from plaintiff's evidence indicating that said employees were on that day engaged in the business of the defendant and were acting within the scope of their authority, if there was any such inference, but established that the trip was made by said employees on their day off from work; that it was undertaken on their own initiative and to serve their own purposes; that the employees traveled in their own machine; that the defendant had nothing to do with ordering or directing their movements and paid no part of their expenses, and that the place where the suit was delivered was on the way to the place where they were going on thir principal mission.

From this testimony it is very apparent that said trip would not have been taken merely for the purpose of delivering said suit and distributing the advertising pads, which was clearly incidental to their trip; instead, the evidence shows that the trip would not have been undertaken but for said personal mission of said employees, and that it was taken on the employees' own initiative and for the primary purpose of serving their own purposes.

Marks' Dependents v Gray et, 167 NE 181.

As has been said, we are not attempting to set forth all of the items of evidence bearing on this question or even all of its phases, but we have said sufficient to indicate our conclusion, which is that, taking into consideration all of the evidence shown by the record bearing upon this question, we are of the opinion that the judgment is not only manifestly and clearly against

the weight of the evidence on this material and vital question, but that reasonable minds cannot reasonably conclude that said trip was made under the direction or at the instance of the defendant and for its benefit; on the contrary, the evidence clearly shows that it was undertaken for the primary purpose of serving the purposes of said employees, and as to that, reasonable minds cannot reasonably differ.

The trial judge should have sustained the motion which the defendant made at the close of all the evidence to direct a verdict in its favor, and for error in not doing so ,the judgment is reversed and final judgment entered for the defendant. **(Wehnes v Schliewe, 47 Oh Ap 452)**, (17 Abs 141).

FUNK and STEVENS, JJ, concur in judgment.

## ON APPLICATION FOR REHEARING

Decided Feb 4, 1935

By WASHBURN, PJ.

It is evident from the application for a rehearing in this case that this court in its opinion did not express itself with sufficient clarity to be understood by counsel for the defendant in error.

For a great many years there was in existence in this state what is known as the "scintilla rule," which did not permit the courts, in a case triable to a jury, to usurp the functions of a jury and determine questions of fact, and on that determination render final judgment, if, in reaching such determination, the court in **any manner** weighed the evidence.

The Court of Appeals of this district tried to adhere strictly to that rule and to compel inferior courts to do the same.

The Supreme Court in several cases, without expressly saying so, modified said rule to the extent of holding that where the only evidence in support of an allegation necessary to establish plaintiff's action was an inference deducible from proven facts and circumstances, the court had a right to weigh the evidence to determine whether such claimed inference was a rational and reasonable one, and that, if the court found that the inference was not a rational and reasonable one, it was the duty of the court to render judgment for the defendant.

This distinction was not always clearly kept in mind by the courts, including even

the Supreme Court, and for that reason the said court, in the case of **Hamden Lodge, etc., v The Ohio Fuel Gas Co., 127 Oh St 469,** decided to expressly abandon the scintilla rule and substitute therefor a rule which does permit both the trial and reviewing courts to weigh the evidence, whether of disputed facts or inferences, to the extent of determining whether the evidence in reference to the essential facts put in issue, and the reasonable inferences deducible therefrom, are such that, as fair-minded men, a jury should reasonably arrive at but one conclusion; and if the court so determines, and such conclusion is favorable to the defendant, the court is charged with the duty of rendering judgment in accordance with such determination.

In the application for a rehearing, counsel have quoted some of the language used in the opinions of this court, applying and compelling the application of the rule as it formerly existed, but it is apparent that such language cannot be appropriately applied to the rule as changed by the Supreme Court.

In the case at bar, we determined not only that the finding of the jury that the servant causing the injury was at that time engaged in the prosecution of his master's business and was acting within the scope of his authority, was manifestly against the weight of the evidence, but we also found that, if there was any evidence tending to sustain such finding of the jury, it was no more than an inference, and that, after giving to such evidence the construction most favorable to the defendant in error, we were of the opinion that, when all of the evidence in the case is considered, it is such that fair-minded men, acting as jurors, could not reasonably reach different conclusions, and that but one conclusion should be reasonably arrived at, which is that, at the time of said injury, said servant was not acting for his master and within the scope of his authority.

In other words, we did not merely reverse on the weight of the evidence and render final judgment. We attempted to honestly follow and apply the rule as announced by the Supreme Court in the Hamden Lodge case, in which case the Supreme Court expressly affirmed the Court of Appeals in reversing and rendering final judgment.

We reached our conclusion only after hearing counsel fully, and after carefully reading and considering all of the evidence and the briefs of counsel; and we are fully satisfied with our conclusion, and therefore we can

see no good reason why the application for a rehearing should be granted, and the same is therefore denied.

FUNK and STEVENS, JJ, concur.